```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
SERENE R. WRIGHT, et al.,

              Plaintiffs,

        v.                              23 CV 1874 (JPO)

ETHICAL CULTURE FIELDSTON
SCHOOL, et al.,

              Defendants.               Conference
                                        (via Telephone)
------------------------------x
MADISON MASON, et al.,

              Plaintiffs,

        v.                              23 CV 1402 (JPO)

ETHICAL CULTURE
FIELDSTON SCHOOL, et al.,

              Defendants.
--------------------------
                                        New York, N.Y.
                                        May 12, 2023
                                        2:30 p.m.
Before:

                HON. J. PAUL OETKEN,

                                        District Judge

                     APPEARANCES

NATHANIEL B. SMITH
JOHN LENOIR
    Attorneys for Plaintiffs

WILMER CUTLER PICKERING HALE & DORR LLP
    Attorneys for Defendants
BY:  DEBO P. ADEGBILE

Also Present:  Derek Sells
```

1                THE COURT:  Good afternoon.  This is Judge Oetken.
2    Mr. Hampton will call the case.
3                MR. SMITH:  Good afternoon, your Honor, Nathaniel
4    Smith for the plaintiff Mason in the *Mason* case and in the
5    related *Wright* case, 23 CV 1874.
6                THE COURT:  Good afternoon.
7                Did someone just join?
8                MR. LENOIR:  John Lenoir for plaintiff.
9                THE COURT:  Good afternoon.
10               Is Mr. Sells on?  I guess not.
11               Counsel for defendant.
12               MR. ADEGBILE:  Good afternoon, your Honor, Debo
13   Adegbile from Wilmer Hale for defendants.
14               THE COURT:  Good afternoon.
15               I guess, Mr. Adegbile, you don't know that Mr. Sells
16   was going to join, right?
17               MR. ADEGBILE:  I don't, your Honor.  I think he hasn't
18   made an appearance yet in this case.
19               THE COURT:  I don't know that we can do this call
20   without him, because I just realized he filed a letter to which
21   Mr. Smith responds, and his letter is in the *Emile* case, which
22   is the only one where he is on the docket.  We put this up in
23   the other two cases.  He wouldn't have had any notice of it
24   unless someone has told him about it.
25               MR. SMITH:  Your Honor, I did not inform him about

1  this conference only because I thought the conference was
2  relating to the defendants' request for more time to answer the
3  complaint in the *Mason* and the *Wright* cases, which Mr. Sells,
4  he never filed a notice of appearance.  He was not counsel in
5  either of those cases.  It's just me and Mr. Lenoir who were
6  counsel in those two cases.  He was involved early on, before
7  the litigation was commenced.
8           THE COURT:  Right.  I understand.  He purported to
9  settle the case on behalf of the client.
10          MR. SMITH:  Yes.  I'm not trying to mislead anybody.
11 I think that's why he didn't get the ECF bounce, because he
12 hasn't filed a notice of appearance in either of these cases,
13 but essentially he has been involved.
14          MR. ADEGBILE:  Your Honor, if I may, I just sent a
15 communication to Mr. Sells trying to find out whether he was
16 aware of this or not.  I think he said he's available to jump
17 on if we send him the number, with the Court's blessing.
18          THE COURT:  Sure.  Do you have the number you could
19 send him?
20          MR. ADEGBILE:  Yes.  I have it in front of me, the
21 same one I just dialed into.  I'm happy to send that to him
22 now, and we can just wait a beat and he will dial in.
23          THE COURT:  OK.  That would be fine.
24          MR. ADEGBILE:  I am just trying to not waste the
25 Court's time on this issue.  I'll be right back.

1           THE COURT:  Thanks.

2           Is that Mr. Sells?

3           MR. SELLS:  Hello.  I'm sorry, your Honor.  This is

4    Derek Sells from The Cochran Firm.

5           THE COURT:  Mr. Adegbile, are you still there?

6           MR. ADEGBILE:  I am, your Honor.

7           THE COURT:  Thanks for joining, Mr. Sells.

8           I realized it's my mistake because I put up the

9    scheduled call in the *Wright* and *Mason* cases, but not in the

10   *Emile* case, because it is true that the purpose of the call was

11   to address specifically the motion by defendants to postpone

12   the deadline for filing an answer pending a potential motion to

13   enforce settlement that defendants contemplate filing, so that

14   is not at issue in the *Emile* case.  But given the letters I

15   received from all of you on March 16, 17, and 20, I thought it

16   made sense to get everyone on the call to address how to go

17   forward in the other two cases.

18          Mr. Adegbile, when do you want to file your motion to

19   enforce settlement, assuming that's what is the next order of

20   business?

21          MR. ADEGBILE:  Your Honor, we would be prepared to

22   file that within two weeks.

23          THE COURT:  That's fine.  Obviously, there is no

24   reason to file an answer until that gets resolved first.

25          Mr. Smith, how long do you want to respond?

1  MR. SMITH: Your Honor, I have got this outstanding
2  request for discovery that I'd like to get addressed before
3  responding to the motion to enforce the settlement.
4  The way I envisioned this is that the defendant is
5  going to have to file a motion for summary judgment raising as
6  a defense settlement or release, or something like that, and I
7  am going to need to have discovery on all of the discussions on
8  that subject that were had between The Cochran Firm and defense
9  counsel's firm in order to properly respond to the motions to
10 enforce the settlement.
11 As of now, I have virtually no information at all.
12 THE COURT: There is no reason it has to be done as a
13 motion for summary judgment. We can do that in the context of
14 a motion before settlement. After it is filed, we will see
15 what the contours of the motion are and then any appropriate
16 discovery, whether sealed or not, you will get.
17 MR. ADEGBILE: Your Honor, I would just add, for the
18 Court and Mr. Smith's edification, that when we file that
19 motion, we plan to attach the relevant correspondence relating
20 to the settlement. As this Court knows, we have done a similar
21 thing in the *Emile* case.
22 We do have some concern that discovery prematurely
23 here is more about litigating a case and less about coming to
24 an understanding about whether or not there was a resolution
25 reached. So that's why we prefer to proceed with the motion

1   and table discovery until that becomes necessary.

2   THE COURT: Yeah. Obviously, that's correct. The
3   only discovery, if there is any discovery, will be on whether
4   there was an agreement, settlement agreement that will be
5   enforced. There is not going to be any other discovery until
6   that issue is resolved.

7   MR. SMITH: Your Honor, I'm sorry. I may have
8   misspoken. All I was doing was seeking information, discovery
9   on the issue of whether or not there actually was a settlement
10  agreement in this case.

11  THE COURT: I understand. That will happen after you
12  get the motion if you need any more.

13  I assume this is very much like the *Emile* case, where
14  the defendants filed a motion to enforce the settlement and
15  then there is a response. You say that there wasn't a meeting
16  of the minds, that the material terms weren't agreed to. As I
17  understand it, then Mr. Sells provided -- I realize this is
18  before me now, and I have not yet resolved it, but I will.
19  Certain documents were submitted under seal. But you were
20  provided with them because they were attorney-client documents,
21  is that right?

22  MR. SMITH: Yes. There were some documents in the
23  *Emile* case that were filed under seal in connection with the
24  *Emile* defendants' motion to enforce the settlement. In
25  particular, there was an unsigned draft settlement agreement or

1  version of that that was, I think, filed under seal and I was
2  not able to get access to that.  But I was able to get a
3  version, I don't know if it was identical, of also an unsigned
4  draft settlement agreement in the *Emile* case.
5          THE COURT:  When Mr. Sells provided certain documents,
6  there were communications with his client.  Weren't you copied
7  on those?
8          MR. SMITH:  Yes.  In the letter, yes, your Honor, you
9  are absolutely right.
10         It's a little bit funky.  When I first appeared, the
11 defendants filed a motion to enforce and Mr. Sells submitted a
12 letter to the Court by email, not on file, which had a lot of
13 materials, like time records and all these other things, and I
14 submitted a letter to the Court, just to the email, not on the
15 docket, responding to the contentions as I understood them
16 then.
17         And in that context, for example, there is an email
18 that I have an unredacted full copy of, which is an email
19 between defense counsel and Mr. Sells where there is an
20 agreement as to an amount.  I think the amount might have been
21 redacted, so I am not going to mention it.
22         But also there were also statements in that email
23 which say, we are also going to agree upon other terms,
24 confidentiality, nondisparagement.  I have that.  I think I got
25 it from my client.

1          But what I don't have is any information from the
2     defendants or from Mr. Sells about these other settlements or
3     alleged settlements.  So I'm convinced that if the defendants
4     file a motion, I am going to be asking for all of the
5     communications on the subject of settlement, not just the ones
6     that the defendants present to the Court as if that was the
7     entire record on these discussions.
8          THE COURT:  Mr. Sells, what is going to be your
9     position on whether you will be willing to disclose to
10    Mr. Smith the kind of same communications that you did in the
11    *Emile* case?
12         MR. SELLS:  Yes, your Honor.  I am going to wait until
13    certainly the defendants' motion is made.  Once the defendants'
14    motion is made, to the extent that I believe Mr. Smith makes
15    representations to the Court that are fraudulent, as I did in
16    the *Emile* case, that's when I will move as an officer of the
17    court to ask leave to file something under seal.  My position
18    is that this -- that the litigation, as I did in the *Emile*
19    case, that there is no nonfrivolous reason to dispute the fact
20    that there is a settlement in these matters.
21         THE COURT:  Can you enter an appearance in the other
22    two cases, just so --
23         MR. SELLS:  I can, your Honor, but I am not sure how.
24    I am not going to be moving -- I could say I move as a
25    representative of the plaintiffs.  Of course, I didn't file any

1  pleading in this case, and I certainly am not making a motion.
2  That's going to be the defendants' motion.  I can certainly ask
3  the Court for leave maybe to enforce a lien, but I am just not
4  sure how to file my appearance in the case.
5          THE COURT:  I just want you on the docket so you are
6  receiving notice of everything.
7          MR. SELLS:  I would like that too.
8          THE COURT:  See if you can file as an interested party
9  or movant or intervenor or something, any of those things.  I
10 would like all the stuff that's been filed by email to be filed
11 under seal on the docket so it's accessible, so I don't have to
12 go through all my emails.
13         That goes for the *Emile* case too, for everybody.  If
14 you file something under seal, you can request it be filed
15 under seal and with sort of Court-only or selected-parties-only
16 viewing level.
17         Two weeks for the motion, and then we will see what
18 discovery needs to be provided.
19         Is this basically the same situation, where, Mr. Sell,
20 to the extent you can tell me, these other two cases, are they
21 the same situation, where you sort of reach the same level of
22 understanding with your clients as to terms, kind of the same
23 level of specificity?
24         MR. SELLS:  I can say yes, your Honor.
25         THE COURT:  Mr. Smith, as far as you know, you're

1  objecting on the same grounds, that this was not a
2  reasonable -- these were not sort of standard reasonable terms
3  of nondisparaging or confidentiality.
4           MR. SMITH:  No, your Honor.  They are very different,
5  frankly.  In the *Emile* case, there was an email exchange
6  between counsel who had appeared in the *Emile* action which, if
7  it had completely and thoroughly set forth, the terms of a
8  settlement, including all of these other terms which I consider
9  to be very, very draconian, then there would be a basis in the
10 law for saying that the lawyers had entered into an agreement
11 that encompassed all of the terms and that they had either
12 actual or apparent authority to do that.
13          The other cases, to my knowledge and, frankly, I am
14 completely without much information at all other than what my
15 clients tell me, but they are not privy to the communications
16 between the Wilmer Hale firm and The Cochran Firm at all.  But
17 my understanding is that there was no such email exchange
18 between the Wilmer Hale firm and The Cochran Firm setting forth
19 any terms.  They were very, very general discussions about a
20 global or an aggregate settlement, and then unsigned draft
21 settlement agreements were circulated to the *Wright* plaintiffs
22 and the *Mason* plaintiffs, which they did not want to sign.
23          THE COURT:  We only have a couple more minutes.  I
24 have another call at 3.
25          In two weeks, you will get the motion to enforce

settlement in each of the two cases, as I understand it, and then I'll give you four weeks to file a response. Within those four weeks you can confer about what discovery you need and see if you can agree on getting the relevant discovery.

MR. SMITH: OK. Very well. I will do that, your Honor.

I would like to say one more thing. I understand the Court's time is tight.

I'm being accused repeatedly by The Cochran Firm of engaging in fraudulent behavior, fraud on the Court, and, at the same time, they are both objecting, defense counsel and The Cochran Firm are objecting to providing me with the information that is relevant to this issue about whether or not there was a settlement.

And I remind the Court that before this lawsuit, the *Wright* lawsuit was filed, I wrote a letter saying, please provide me with any information about this settlement that you say exists, and I got nothing.

So I am being accused of a fraud on the Court. I have been a member of the bar of the Southern District since 1988. This is not an everyday allegation for me. I have never been accused of this kind of behavior.

I think I'm entitled, frankly, to this information as soon as possible, and I don't think it's the kind of thing that I should have to negotiate with defense counsel about whether

1  or not they will agree or not with providing me with
2  information that's clearly relevant to not only the settlement,
3  but the response to this allegation that this is some sort of
4  fraud on the Court.
5              THE COURT:  Look.  As a general matter, you are going
6  to get relevant discovery that's not -- we will have to fight
7  about whether there is privilege issues, I guess.  Anything
8  relevant to whether there was a settlement and apparent
9  authority and actual authority to enter into the settlement,
10 you are going to get it.
11             MR. SMITH:  Thank you.
12             THE COURT:  I realize four weeks might not be enough.
13 You can ask for an extension.
14             The request of defendants for an extension of time to
15 respond until after this motion is resolved is granted.
16             Thanks, everybody.
17             (Adjourned)